[Cite as *Dick Lavy Trucking, Inc. v. ScriptSourcing, L.L.C.*, 2026-Ohio-3139.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | |
|---|---|
| DICK LAVY TRUCKING, INC. | : |
| Appellee | : C.A. No. 2025-CA-24 |
| | : |
| | : Trial Court Case No. 25CV00204 |
| v. | : |
| | : (Civil Appeal from Common Pleas |
| SCRIPTSOURCING, LLC | : Court) |
| | : |
| Appellant | : **FINAL JUDGMENT ENTRY &** |
| | : **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 14, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately send a copy of the court's ruling to each party and note that action on the docket. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

CHRISTOPHER B. EPLEY, JUDGE

TUCKER, J., and HANSEMAN, J., concur.

KEVIN A. BOWMAN, Attorney for Appellant
MARK R. CHILSON, Attorney for Appellee

EPLEY, J.

{¶ 1} ScriptSourcing, LLC, appeals from the Darke County Common Pleas Court's judgment denying ScriptSourcing's motion for relief from default judgment. ScriptSourcing asserts that the trial court abused its discretion by denying relief due to mistake, inadvertence, and/or excusable neglect. For the following reasons, the judgment of the trial court is affirmed.

## I. Facts and Procedural History

{¶ 2} ScriptSourcing is a company that assists businesses that use self-funded insurance plans with lowering their costs. Its fees are based on a portion of the total amount saved by a company using ScriptSourcing's services. In January 2019 and November 2023, ScriptSourcing entered into agreements with Dick Lavy Trucking, Inc. ("DLT"), to provide these services.

{¶ 3} In March 2025, a dispute arose between the parties regarding fees DLT allegedly owed to ScriptSourcing. On March 31, 2025, DLT's attorney sent a demand letter to ScriptSourcing, and ScriptSourcing retained counsel to respond to the letter from DLT's counsel and to attempt to resolve the dispute. However, on June 2, 2025, DLT filed a complaint for declaratory judgment. The complaint was successfully served via certified mail on Gary Becker, the registered agent and CEO of ScriptSourcing, at his home in Lutherville, Maryland, on June 9, 2025. Copies of the summons and complaint were also served on

ScriptSourcing's corporate office on June 10, 2025. Accordingly, an answer or other responsive pleading was due on or before July 7, 2025. Civ.R. 12(A)(1).

{¶ 4} Although ScriptSourcing acknowledged receiving the summons and complaint, no one at ScriptSourcing, including Becker, forwarded the documents to ScriptSourcing's attorney, nor did ScriptSourcing take any other action to respond to DLT's complaint. Additionally, on July 23, 2025, the trial court sent a notice of a telephone scheduling conference to the parties via regular mail, notifying them that a conference was set for September 19, 2025. Again, although ScriptSourcing acknowledged that Becker had received the notice at his home and ScriptSourcing's corporate office had also been served, the notice was never forwarded to ScriptSourcing's counsel, and no other action was taken to respond.

{¶ 5} On July 25, 2025, after ScriptSourcing failed to answer or otherwise respond to DLT's complaint, DLT filed a motion for default judgment. The trial court granted the motion on August 1, 2025.

{¶ 6} On September 16, 2025, ScriptSourcing filed a motion for relief from judgment pursuant to Civ.R. 60(B) and motion for leave to file answer and counterclaim instanter. ScriptSourcing asserted that its failure to respond to the complaint was due to excusable neglect because "[i]t was not unreasonable for ScriptSourcing to believe that it had adequately protected its interests by retaining counsel and that counsel would advise the company what to do. ScriptSourcing could not know, however, that its counsel had never been notified that litigation had been filed or that [DLT] was seeking a default judgment." *See* Motion for Relief from Judgment, p. 10. Additionally, ScriptSourcing argued that the court should not have granted default judgment without first holding a hearing.

3

**{¶ 7}** On November 18, 2025, the trial court issued an order denying ScriptSourcing's motion for relief from judgment. The trial court first found that ScriptSourcing had failed to establish that its neglect in failing to answer or otherwise respond to DLT's complaint was excusable. The court noted that although ScriptSourcing blamed DLT's counsel for filing the complaint "secretly," there was nothing secret about the filing. In fact, ScriptSourcing acknowledged receiving notice of the lawsuit at its corporate office, as well as through service of its CEO and statutory agent. The trial court further noted that ScriptSourcing acknowledged receiving notice of the scheduling conference set by the trial court but still failed to respond to DLT's complaint.

**{¶ 8}** The trial court addressed the test for excusable neglect set forth in *Hopkins v. Quality Chevrolet, Inc.*, 79 Ohio App.3d 578 (4th Dist. 1992), which both parties cited. In that case, the Fourth District held that a party can establish excusable neglect by demonstrating "(1) that there is a set procedure to be followed in the corporate hierarchy for dealing with legal process, and (2) that such procedure was, inadvertently, not followed until such time as a default judgment had already been entered against the corporate defendant." *Id.* at 583. In the present case, the trial court found that there was no evidence that ScriptSourcing had a corporate procedure in place to handle the receipt of legal process, nor did ScriptSourcing demonstrate that any such procedure was inadvertently disregarded. Further, the trial court determined that it was not required to hold a hearing before granting DLT's motion for default judgment. The court concluded that the participation of ScriptSourcing's counsel in settlement discussions prior to the filing of the underlying lawsuit did not constitute an "appearance" in this matter under Ohio law. Therefore, the trial court overruled ScriptSourcing's motion for relief from judgment.

4

{¶ 9} ScriptSourcing now appeals the trial court's judgment. It raises two assignments of error.

## II. Appellate Review

{¶ 10} In its first assignment of error, ScriptSourcing asserts that the trial court abused its discretion when it denied ScriptSourcing's motion for relief from judgment due to mistake, inadvertence, and/or excusable neglect. ScriptSourcing appears to contend that because it hired an attorney to participate in settlement discussions with DLT, it reasonably assumed that its attorney would be notified of the pending lawsuit. In its second assignment of error, ScriptSourcing asserts that the trial court erred in denying its motion for relief from judgment because its attorney did not receive notice and the motion was granted without a hearing. Because these assignments of error are interrelated, we address them together.

{¶ 11} Civ.R. 60(B) provides, in relevant part, that a trial court may relieve a party from a final judgment, order, or proceeding due to mistake, inadvertence, surprise, or excusable neglect or any other reason justifying relief from judgment. Civ.R. 60(B)(1) and (5). The decision to grant or deny a Civ.R. 60(B) motion is left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *In re Adoption of A.J.W.*, 2023-Ohio-2609, ¶ 15 (2d Dist.).

{¶ 12} The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "It is to be expected, however, that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *State v. Malloy*, 2012-Ohio-2664, ¶ 24 (2d Dist.).

{¶ 13} With respect to whether ScriptSourcing's failure to respond to DLT's complaint was due to excusable neglect, the record demonstrates that copies of the summons and

5

complaint were successfully served on ScriptSourcing's CEO and registered agent, Becker, as well as at its corporate office, where a ScriptSourcing employee signed for them. Notably, Becker admitted in his affidavit in support of ScriptSourcing's motion for relief from judgment that "ScriptSourcing received a copy of the complaint and summons in this case."

{¶ 14} Additionally, contrary to ScriptSourcing's reliance on the test set forth in *Hopkins* to establish excusable neglect, there is nothing in the record demonstrating that ScriptSourcing had a corporate policy in place for handling legal process or that any such policy was inadvertently disregarded. Rather, Becker states in his affidavit that "the matter was not flagged as requiring action due to laypeople's misunderstanding regarding the importance of the documents." Accordingly, the trial court did not abuse its discretion when it determined that ScriptSourcing failed to establish excusable neglect.

{¶ 15} Further, we disagree with ScriptSourcing's assertion that the trial court erred by granting default judgment in favor of DLT without holding a hearing and without its attorney receiving notice. Specifically, Civ.R. 55(A) states that "*[i]f the party against whom judgment by default is sought has appeared in the action*, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least seven days prior to the hearing on such application. (Emphasis added.)

{¶ 16} ScriptSourcing's counsel never entered an appearance in this matter, and although ScriptSourcing had retained counsel to participate in settlement discussions with DLT, there is nothing in the record establishing that the same attorney intended to represent ScriptSourcing in the litigation of this matter when DLT filed its complaint. Because counsel for ScriptSourcing never entered an appearance and ScriptSourcing failed to otherwise respond, no hearing was required and service was properly made on ScriptSourcing's

6

registered agent and at its corporate headquarters. Therefore, the trial court did not err by granting DLT's motion for default judgment against ScriptSourcing without holding a hearing.

{¶ 17} Both of ScriptSourcing's assignments of error are overruled.

### III. Conclusion

{¶ 18} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HANSEMAN, J., concurs.

TUCKER, J., concurs:

{¶ 19} I concur with the majority opinion's conclusion that the trial court did not abuse its discretion in denying ScriptSourcing's Civ.R. 60(B)(1) motion for relief from the default judgment. I also concur with the majority opinion's conclusion that, under the facts of this case, ScriptSourcing did not make an appearance entitling it, under Civ.R. 55(A), to written notice of the default judgment application seven days before the hearing on the motion. I write separately to discuss the case law outlining when, in the absence of a filing with the court, an appearance triggering the Civ.R. 55(A) notice requirement occurs.

{¶ 20} We have concluded that after a defendant is served with a complaint, defendant's contact with the plaintiff indicating an unambiguous "intention and purpose to defend the suit" constitutes an appearance invoking the Civ.R. 55(A) mandate that the defendant be notified of a default judgment hearing seven days before the hearing. *Allstate Inc. Co. v. Hunt*, 2006-Ohio-238, ¶ 13, (2d Dist.), quoting *Miamisburg Motel v. Huntington Natl. Bank*, 88 Ohio App.3d 117, 126 (2d Dist. 1993). Since, in such a circumstance, the court is unaware of the defendant's appearance, the plaintiff has an obligation to notify the court of the defendant's appearance so that the Civ.R. 55(A) notification can occur. *Id.* at ¶ 13, quoting *Miamisburg Motel* at 127.

7

**{¶ 21}** Other districts have reached the same, or at least similar, conclusion regarding when post-suit communication between the parties can constitute an appearance. *Baines v. Harwood*, 87 Ohio App.3d 345, 347 (12th Dist. 1993); *Mateyko v. Crain*, 2012-Ohio-1133, ¶ 16 (11th Dist.); *Johnson v. Romeo*, 2006-Ohio-7073, ¶ 22 (7th Dist.); *Kebler v. Prudential Prop. & Cas. Ins. Co.*, 2003-Ohio-2145, ¶ 36 (5th Dist.).

**{¶ 22}** But, based on my research, neither we nor any other district has concluded that any type of pre-suit communication can constitute an appearance under Civ.R. 55(A). The rationale for this distinction is that "[a]lthough a formal filing with the court is not [necessarily] required, the plain language of [Civ.R. 55(A)] speaks of an appearance 'in the action[,]'" and there simply is not an action before a lawsuit is filed. *Bd. of Trustees of Salem Twp. v. Fazekas*, 2023-Ohio-2984, ¶ 61 (7th Dist.). *See also Hyway Logistics Servs., Inc. v. Ashcraft*, 2000 WL 123794, *3 (3d Dist. Feb. 2, 2000) ("[O]ur reading of the relevant case law reveals that those communications [that may] satisfy the appearance requirement occur after the commencement of the suit.") I agree that pre-suit communication—irrespective of the intensity of the putative defendant's expressed intent to defend a cause of action—cannot be considered a Civ.R. 55(A) appearance.

**{¶ 23}** Since the communication between DLT and ScriptSourcing occurred before DLT filed the declaratory judgment complaint, ScriptSourcing did not make an appearance in the action. For this reason, I concur in the majority opinion's resolution of this issue.